IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PHILIP MOSIER,

    Plaintiff,

v.                                                      CASE NO. 5:11-cv-399-MP-GRJ

FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion To Dismiss (Doc. 18). Plaintiff has filed a response (Doc. 26), and therefore the motion is ripe for review. For the reasons discussed below, the undersigned recommends that the motion be granted.

### I. Introduction

Plaintiff, a state prisoner, alleges in his amended complaint that he suffers from paruresis or "shy bladder," a condition that renders him unable to urinate in the presence of others. He alleges he first began experiencing symptoms in 2003 while at the Manatee County Jail, and his symptoms persisted when, in December 2004, he entered the custody of the Florida Department of Corrections. Plaintiff alleges that because of his condition, he must wait several hours to urinate, resulting in severe pain in his lower abdomen. Plaintiff made no complaints to prison officials until 2007, faced with punishment if he could not urinate during a drug test. Plaintiff requested a single man cell pass and an alternate method of drug testing. Plaintiff was instructed to access sick call regarding the issue; he did so and was told it was a psychological issue

and he could not get a single man cell or non-urine drug testing.

Plaintiff apparently did not pursue the issue until June 2011, when he says he contemplated suicide because of his condition and sought help from prison mental health services. Plaintiff alleges that Dr. Ausband Harris diagnosed him with shy bladder, or paruresis, and told him that while the condition could not be cured, it could be accommodated. Plaintiff contends that Dr. Harris told him a single man cell might be a viable remedy but he wanted to speak with his colleagues first. Plaintiff alleges that after 10 days, he heard nothing further from Dr. Harris so he filed an inmate request on June 16, 2011. Receiving no response to that inmate request, Plaintiff sent another one on July 5, 2011. In response, Plaintiff was instructed to address the issue through sick call.

Rather than address the issue through sick call as instructed, Plaintiff filed a formal grievance on August 1, 2011, alleging violations of the Eighth Amendment and Americans with Disabilities Act. His grievance was denied on August 16, 2011, based on his failure to access sick-call about the issue. Plaintiff alleges that his mental health visit should have sufficed. On August 17, 2011, Plaintiff filed a DC2-530 "Reasonable Modification or Accommodation Request", requesting placement in a single-man cell. Also on August 17, 2011, Plaintiff was approved for a good adjustment transfer. During an annual review on August 25, 2011, Plaintiff inquired about his request and Sgt. Young arrived shortly thereafter to discuss the issue. Dr. Harris was called in and confirmed Plaintiff's allegations. The following day, Plaintiff was moved into a single-man cell. However, he alleges that he never received official notification that his accommodation request was approved.

*Case No. 5:11-cv-399-MP-GRJ*

On September 21, 2011, Plaintiff submitted another inmate request with a second DC2-530 attached. Plaintiff wanted to assure that his request was approved so that he did not face difficulties after transferring to a new institution. On September 27, 2011, Plaintiff was summoned to the mental health department to speak with Dr. Thomas, a colleague of Dr. Harris, who informed Plaintiff that he wanted to discuss the matter with Dr. Harris and the regional psychiatrist before making a determination on the DC2-530 request. Dr. Thomas advised Plaintiff that it was doubtful the request would be approved, and noted that Plaintiff's medical file did not reflect a diagnosis, only Plaintiff's complaints.

On October 4, 2011, Plaintiff had not received a response so he submitted an inmate request to mental health requesting a determination be made on his DC2-530 request. The following day, Dr. Harris, Sgt. Young and Plaintiff had a meeting wherein Sgt. Young stated that Plaintiff was only moved to the cell because Sgt. Young was being kind. Sgt. Young also stated that he was not going to do a written determination on the DC2-530 request but advised Plaintiff that his request was denied. Plaintiff alleges that Sgt. Young told him "If you keep pursuing this issue you will be moved out of that room as easily as you were moved in there." Plaintiff also alleges that Dr. Harris told him if he didn't stop hassling them or chose to grieve the issue, Plaintiff would be "moved into a two man cell, in a dorm he didn't want to be in and it would be arranged where [Plaintiff] would have a 'real issue' to complain to medical about" and that it "isn't a threat or good advice, it's a promise."

Plaintiff alleges he returned to his dorm and approached an inmate who was a law clerk and was told to find a way to address the issue but not to use the grievance

*Case No. 5:11-cv-399-MP-GRJ*

system.  On October 11, 2011, Plaintiff filed an ADA and Rehabilitation Act complaint to the U.S. Department of Justice and the following day filed a grievance of sensitive nature directly to the DOC Secretary.  His grievance was rejected as a grievance of sensitive nature and advised Plaintiff to pursue the issue at the institutional level.  Plaintiff did not pursue the issue as advised but instead filed the instant lawsuit to prison officials for mailing on December 5, 2011.  Plaintiff seeks nominal damages and injunctive relief.  (Doc. 1.)

## II.  DEFENDANTS' MOTION TO DISMISS

Defendants contend that dismissal of the complaint is warranted on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies prior to filing suit; (2) Plaintiff's ADA and Rehabilitation Act claims fail to state a claim upon which relief may be granted; (3) Defendant Tucker should be dismissed as a party defendant; and (4) Plaintiff is not entitled to nominal damages.  (Doc. 18.)

## III.  STANDARD OF REVIEW

The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions.  "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue, v. Pearson,* 2011 U.S. Dist. LEXIS 66950, *2-3 (S.D. Ga. 2011) (citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005)).  Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted.  *See Jones v. Bock,* 549 U.S. 199, 211 (2002).

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12(b) and, thus, is treated like a

defense of lack of jurisdiction.  *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008).  Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082.  If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*

"Where exhaustion–like jurisdiction, venue, and service of process–is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record."  *Bryant*, 530 F.3d at 1376.  Affording the district court this discretion advances the purposes of the PLRA: "Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement and would unnecessarily undermine Congress's intent in enacting the PLRA's exhaustion requirement[.]"  *Id.* at 1376-77 (internal citations omitted).

## IV. DISCUSSION

The Florida Administrative Code provides a three-step administrative remedy process for inmates of facilities within the Florida Department of Corrections.  With certain exceptions, inmates initiate the process by submitting an informal grievance.  If

the inmate is dissatisfied with the response to the informal grievance, he can submit a formal grievance at the institutional level within 15 days of the response to the informal grievance.  If the inmate is dissatisfied with the response to the formal grievance, he can file an appeal with the Office of the Secretary within 15 days of the response to the formal grievance.   See FLA. ADMIN. CODE § 33-103.005-008, § 33-103.011(c).  Inmates are also permitted to file grievances directly to the Secretary's Office in limited situations such as emergency grievances, grievances of reprisals, or grievances of a sensitive nature.  Id. at 33.103.007(6).   If a direct grievance is received and deemed not to be a permissible direct grievance, it shall be "returned to the inmate with the reasons for return specified advising the inmate to resubmit his or her grievance at the appropriate level."  Id. at 33.103.007(6)(d).

Plaintiff was moved to a single-man cell in August 2011 but did not receive a single-man cell pass or other official accommodation, which he wanted to safeguard his single-man status in the event of transfer to another institution.  In October 2011, after learning that his request was denied (although he was still permitted to stay in a single-man cell), Plaintiff filed a direct grievance with the DOC Secretary.  Plaintiff described his grievance as one "of sensitive nature based on [Plaintiff's] belief of retaliation if filed at the institutional level."  Plaintiff described the events as he has described them in the instant complaint.  (Doc. 1, pp. 15-16.)  In response, the Secretary's office informed Plaintiff that the "grievance is not accepted as a grievance of a sensitive nature" and advised him to resubmit his grievance at the institutional level.  (Id. at p. 17.)  Plaintiff did not pursue the institutional grievance process.

The Court may not consider the adequacy or futility of administrative remedies,

but only the availability of such. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000) (citing *Alexander v. Hawk*, 159 F.3d 1321, 1323 (11th Cir. 1998)). An administrative remedy is unavailable for PLRA purposes if prison officials render pursuit of the remedy irrational through threats of substantial retaliation. *Turner*, 541 F.3d at 1084-85. Both of the following conditions must be met to lift the exhaustion requirement:

> (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id*. at 1085.

In his response in opposition to the motion to dismiss, Plaintiff asserts that his administrative remedies were unavailable because he received serious threats of substantial retaliation: Sgt. Young and Dr. Harris threatened to move him out of his single-man cell if he complained. (Doc. 26, p. 3.) Plaintiff contends that although, per the rules, he could have grieved directly to the Warden or Assistant Warden at Calhoun C.I., the formal grievance would have been handled by the medical department. (*Id.* at p. 8.) Defendants argue that Plaintiff failed to properly exhaust his administrative remedies when he failed to follow the directions of the Secretary's office to pursue his grievance at the institutional level. To allow Plaintiff to circumvent the established administrative procedures improperly assumes, without any factual support, that the Warden of Calhoun C.I. could not or would not investigate Plaintiff's allegations of retaliation and request for official ADA accommodations, according to Defendants. (Doc. 18.)

*Case No. 5:11-cv-399-MP-GRJ*

"'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).  In this case, Plaintiff was in the unique position of already unofficially receiving his accommodation–a single-man cell–when he submitted a direct grievance to the Secretary's office requesting official approval of the accommodation.  When the Secretary's office declined to accept his grievance as one of a sensitive nature and advised him to pursue grievances at the institutional level, Plaintiff failed to comply with their instructions.  Instead, he filed a complaint with the Department of Justice and then filed the instant lawsuit.

Plaintiff did not comply with the grievance process and, therefore, under *Woodford v. Ngo*, did not properly exhaust administrative remedies.  *Woodford v. Ngo,* 126 S. Ct. 2378, 2382 (2006); *see also Dimanche v. Brown*, Doc. 81, Case No. 4:11-cv-533-SPM-CAS (May 21, 2012) (granting motion to dismiss for failure to exhaust where inmate, alleging fear of being "gassed" with chemical agents in retaliation for filing grievances, failed to properly file his direct grievance to the Secretary).  Plaintiff's failure to comply with the DOC's administrative grievance program deprived the institution of a fair opportunity to correct its own errors; to permit him to proceed without fulfilling the mandatory exhaustion requirement would undermine the very purpose of the PLRA exhaustion provision.  *See, e.g., Woodford,* 126 S. Ct. at 2387-89.  Plaintiff has not shown that administrative remedies were unavailable to him and accordingly, the motion to dismiss should be granted.

*Case No. 5:11-cv-399-MP-GRJ*

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss (Doc. 18) should be **GRANTED** to the extent that Plaintiff's suit should be dismissed for failure to exhaust his administrative remedies.

**IN CHAMBERS** this 19th day of June 2012.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**